# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF ALABAMA

In re
           Case No. 15-30401-WRS
           Chapter 7

JACK R. THOMAS
ANGELA S. THOMAS,

       Debtors

JACK R. THOMAS and
ANGELA S. THOMAS,

       Plaintiffs
           Adv. Pro. No. 16-3045-WRS

   v.

SETERUS INC. and
JPMORGAN CHASE,

       Defendants

### <u>MEMORANDUM OPINION</u>

This adversary proceeding is before the Court on the motion to dismiss filed by

Defendant JPMorgan Chase ("Chase"). (Doc. 12). Plaintiffs Jack and Angela Thomas

("Plaintiffs") allege that Chase willfully violated the automatic stay by sending them monthly

mortgage statements and letters threatening to charge them for force-placed hazard insurance on

the mortgaged property. (Doc. 1). They also argue that Chase is responsible for the actions of its

mortgage servicer, Defendant Seterus, Inc. ("Seterus"). Plaintiffs have filed a response to

Chase's motion to dismiss, to which Chase filed a reply, and the Court heard oral argument from

counsel for both parties at a hearing on July 19, 2016. (Docs. 14 and 16). For the reasons set

forth below, Chase's motion to dismiss is GRANTED.

## I. FACTS & PROCEDURAL HISTORY

### A. Bankruptcy

Plaintiffs filed Chapter 7 bankruptcy on February 16, 2015. (Case No. 15-30401). At the time of their filing, Plaintiffs owed Chase $134,489 on a note that was secured by a mortgage on real property in Prattville, Alabama ("the Property"), and their schedules indicated their intent to surrender the Property. (Case No. 15-30401, Doc. 1). Chase moved for relief form the automatic stay with respect to the Property on April 8, 2015, and the Court granted the motion on May 5, 2015. (Case No. 15-30401, Docs. 15 and 21). Plaintiffs obtained a Chapter 7 discharge on July 2, 2015 without reaffirming their debt to Chase. (Case No. 15-30401, Doc. 37).

### B. Monthly Mortgage Statements

Starting on April 1, 2015, Chase began mailing monthly mortgage statements to Plaintiffs, examples of which are attached as exhibits to Chase's motion and to Plaintiffs' response brief. (Doc. 12, Ex, B; Doc. 14, Ex. A). Each of the statements are two pages long. The front of the first page recites the original and unpaid principal balances and the monthly payment. Separated from this information and prominently featured at the bottom of the first page is the following disclaimer:

> **To the extent your original obligation was discharged, or is subject to an automatic stay of bankruptcy under Title 11 of the United States Code, this statement is for compliance and/or informational purposes only and does not constitute an attempt to collect a debt or to impose personal liability for such obligation. However, a secured party retains rights under its security instrument, including the right to foreclose its lien.**

(Doc. 12, Ex. B; Doc. 14, Ex. A) (bold type in original). Below this statement is a reference to a "bankruptcy information page" included with the statement – the second page. The back side of

Case 16-03045    Doc 17    Filed 08/05/16    Entered 08/05/16 15:26:03    Desc Main
Document    Page 2 of 21

the first page lists contact information for several of Chase's departments, as well as information on how to make payments. At the bottom of the back side of the first page under the heading "**Important Bankruptcy Information**" the statement adds a second disclaimer: "If you or your account is subject to pending bankruptcy proceedings, or if you received a bankruptcy discharge, this statement is for informational purposes only and is not an attempt to collect a debt." (Doc. 12, Ex. B; Doc. 14, Ex. A).

The second page has the heading "**Bankruptcy Information**" and notes at the top of the body of the statement that "**ACCOUNT STATEMENT IS FOR INFORMATIONAL PURPOSES ONLY**." It lists the bankruptcy chapter filed, the interest rate, and the principal balance, and provides a phone number to contact "Bankruptcy Customer Service." Below that information on the second page is a bold-type disclaimer identical to the one found on the front of the first page, and below that is a payment stub. The back side of the second page is blank except for the payment stub, which requests that any change in address or phone number be noted. (Doc. 12, Ex. B; Doc. 14, Ex. A).

### C. Hazard Insurance Letters

Chase also mailed Plaintiffs "several" letters requesting information of hazard insurance on the Property, an example of which is attached as an exhibit to Chase's motion. (Doc. 12, Ex. D). Seven pages long, the letter warns that if Plaintiffs do not provide proof of insurance on the Property, Chase would purchase insurance and hold Plaintiffs liable for it. The first paragraph of the first page includes the following statement:

> **Because hazard insurance is required on your property, we**
> **plan to buy insurance for your property.** You must pay us for
> any period during which the insurance we buy is in effect but you
> do not have insurance.

(Doc. 12, Ex. D) (bold type in original). The letter includes charts comparing the benefits to

Plaintiffs of purchasing their own insurance versus the consequences of force-placed insurance.

It also includes two pages of answers to "frequently asked questions," as well as a page detailing

the required coverage of the hazard insurance. On the last page, under the heading

"**IMPORTANT BANKRUPTCY INFORMATION**," the letter suggests that Plaintiffs refer the

letter to their bankruptcy attorney and includes the following disclaimer:

> **To the extent your original obligation was discharged, or is**
> **subject to an automatic stay of bankruptcy under Title 11 of**
> **the United States Code, this notice is for compliance and/or**
> **informational purposes only and does not constitute an attempt**
> **to collect a debt or to impose personal liability for such**
> **obligation.**

(Doc. 12, Ex. D) (bold type in original).

### D. Seterus's Conduct

On August 1, 2015, Chase transferred Plaintiffs' mortgage loan to Seterus, who "began

making multiple harassing phone calls to Plaintiffs to collect on the debt[,]" notwithstanding

Plaintiffs informing Seterus that they had filed bankruptcy. (Doc. 1). Seterus likewise mailed

monthly mortgage statements and letters threatening to purchase force-placed hazard insurance

on the Property at Plaintiffs' expense. On January 14, 2016, Seterus notified Plaintiffs that it had

purchased hazard insurance on the Property at a monthly premium of $1,761.76 and was holding

Plaintiffs responsible for the premiums. Seterus was still engaging in this conduct at the time

Plaintiffs filed suit.

-4-

### E.  Adversary Proceeding

Plaintiffs initiated this adversary proceeding on May 16, 2016 against Chase and Seterus, alleging that their activity willfully violated the automatic stay.  (Doc. 1).  Seterus answered with a general denial.  (Doc. 6).  Chase filed a motion to dismiss, arguing that the monthly mortgage statements did not violate the automatic stay because they were not attempts to collect the debt from Plaintiffs personally.  (Doc. 12).  Chase also asserts that its letters regarding hazard insurance did not violate the automatic stay because the letters were necessary for Chase to comply with the Real Estate Settlement Procedures Act ("RESPA").  (Doc. 12).

Plaintiffs respond that the communication of a debt to the debtor or to a third party is an "act to collect" the debt in violation of the automatic stay.  (Doc. 14).  They argue that, given the circumstances in which Chase sent its mortgage statements, the statements would be objectively understood as pressuring them to pay Chase.  They further argue that the disclaimers are too equivocal to shield Chase from liability, and that providing information is not a legitimate basis for sending the statements.  (Doc. 14).  Plaintiffs assert that Chase's letters threatening to hold them responsible for hazard insurance also violate the automatic stay because they had no continuing duty to maintain insurance once they surrendered the Property and vacated it.  They argue the obligation to maintain insurance was a pre-petition *in personam* obligation arising out of their mortgage contract that they discharged along with the rest of their mortgage debt.  (Doc. 14).  Finally, Plaintiffs argue that they are entitled, at this procedural posture, to a presumption that Chase is responsible for Seterus's actions on the grounds that they have an agency relationship and that Chase failed to notify Seterus of the bankruptcy.  (Doc. 14).

In its reply, Chase reiterates that the monthly mortgage statements did not violate the automatic stay, and argues it cannot violate the automatic stay by complying with RESPA. (Doc. 16). Chase also argues that Plaintiffs are still contractually obligated to provide insurance on the Property so long as it remains in their name. (Doc. 16). Finally, Chase argues that Plaintiffs must plead facts demonstrating that it has an agency relationship with Seterus, and that Plaintiffs are not entitled to a presumption on that point.

## II. LAW

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157(a), and the District Court's General Order of Reference dated April 25, 1985. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). This is a final order.

### A. Standard of Review

Rule 12(b)(6), as incorporated by FED. R. BANKR. P. 7012(b), authorizes a court to dismiss complaints that fail to "state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A court's analysis of a complaint in the context of a motion to dismiss is a two-step process. First, the court must identify, and cull, pleadings that are mere legal conclusions or "[t]hreadbare recitals of the elements of a cause of action," for such pleadings "are not entitled to the assumption of truth." Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. at 679.

"[S]tating such a claim requires a complaint with enough factual matter (taken as true)" "to raise a right to relief above the speculative level," i.e., the complaint must be "plausible on its

face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56, 570 (2007). "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "The

plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer

possibility that a defendant has acted unlawfully." Id. A "well-pleaded complaint may proceed

even if it strikes a savvy judge that the actual proof of those facts is improbable, and 'that a

recovery is very remote and unlikely.'" Bell Atl. Corp., 550 U.S. at 556.

### B. Consideration of Exhibits Attached to a Motion to Dismiss

"[T]he analysis of a [Rule] 12(b)(6) motion is limited primarily to the face of the

complaint and attachments thereto." Brooks v. Blue Cross & Blue Shield of Fla., 116 F.3d 1364,

1368 (11th Cir. 1997). "However, where the plaintiff refers to certain documents in the complaint

and those documents are central to the plaintiffs [sic] claims, then the Court may consider the

documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's

attaching such documents to the motion to dismiss will not require conversion of the motion into

a motion for summary judgment." Id. at 1368; see also Day v. Taylor, 400 F.3d 1272, 1276 (11th

Cir. 2005); Venture Assoc. Corp. v. Zenith Data Sys. Corp., 987 F.2d 429, 431 (7th Cir. 1993)

("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings

if they are referred to in the plaintiff's complaint and are central to her claim."); Richardson v.

PNC Mortg. (In re Richardson), 538 B.R. 594, 609 n.11 (Bankr. M.D. Ala. 2015).

Chase attached four exhibits to its motion to dismiss: (A) a February 27, 2015 letter to

Plaintiffs' bankruptcy attorney that acknowledged Plaintiffs' bankruptcy case and informed him

that they would continue to provide Plaintiffs with monthly statements for informational

purposes; (B) a monthly mortgage statement dated March 2, 2015; (C) a notice of acceleration and intent to foreclose dated May 27, 2015[1]; and (D) a letter dated June 30, 2015 threatening to charge Plaintiffs for force-placed hazard insurance if Plaintiffs did not provide proof of insurance. (Doc. 12). The latter three exhibits were all referenced in Plaintiffs' complaint and are clearly central to their claim against Chase, so the Court will consider them as part of Chase's motion to dismiss. However, Plaintiffs' complaint makes no reference to Chase's February 2015 letter to their bankruptcy attorney, so Chase cannot now include it as part of a motion to dismiss under Rule 12(b)(6); prior to trial, such evidence can only be raised as part of a Rule 12(c) motion for judgment on the pleadings (after first properly alleging the document's existence in an answer) or as part of a motion for summary judgment. The Court will not consider the February 2015 letter as it scrutinizes the merits of Chase's motion to dismiss.

### C. Willful Violation of the Automatic Stay

The filing of a bankruptcy petition "operates as a stay, applicable to all entities, of . . . any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case. . . ." 11 U.S.C. § 362(a)(6). "[A]n individual injured by any willful violation of a stay provided by [§ 362] shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1). Claims under § 362(k) consist of three basic elements: the violation of the stay, the defendants' willfulness, and the plaintiffs' injury. Campbell v. Carruthers (In re Campbell), --- B.R. ----, 2016 WL 3435722, *3, *5 (Bankr. M.D. Ala. Jun. 14, 2016). Violations of the automatic stay

---

[1] Plaintiffs referred to this letter in their complaint as part of the basis for their suit. However, they concede in their response brief that this letter does not violate the automatic stay, so the Court will not discuss it further. (Doc. 14).

are willful "if the violator (1) knew of the automatic stay and (2) intentionally committed the violative act, regardless of whether the violator specifically intended to violate the stay." Jove Eng'g, Inc. v. IRS (In re Jove Eng'g, Inc.), 92 F.3d 1539, 1555 (11th Cir. 1996).

### D. Defining "Act to Collect"

Before analyzing the specifics of Chase's communications, the Court must consider what the "act to collect" language in § 362(a)(6) means. Plaintiffs argue that mere communication of a debt to the debtor or a third party is an "act to collect." (Doc. 14) (citing Mann v. Chase Manhattan Mortg. Corp., 316 F.3d 1, 3-4 (1st Cir. 2003), and In re Sims, 278 B.R. 457, 471 (Bankr. E.D. Tenn. 2002)). This is true for an unsecured debt because there is no legitimate reason to communicate its existence outside bankruptcy other than as an attempt to collect it. For a debt secured by a mortgage on residential real property, however, there are valid reasons to communicate information about the debt that have nothing to do with attempting to collect it against the debtor personally. *See* Cousins v. CitiFinancial Mortg. Co. (In re Cousins), 404 B.R. 281, 286-87 (Bankr. S.D. Ohio 2009). Mann and Sims do not support Plaintiffs' argument for a broader reading with respect to residential mortgage debt. Sims dealt with a creditor's internal bookkeeping notation of post-petition interest accrual; in determining that activity did not violate the automatic stay, the court stated in dicta that "any creditor *could produce all kinds of paperwork* which if communicated to the debtor or a third party would violate the stay, but absent that communication, some overt act, or resulting effect on the debtor, no violation has occurred." Sims, 278 B.R. at 471 (emphasis added). Mann likewise dealt with post-petition bookkeeping entries and quoted the above language from Sims in a parenthetical. *See* Mann, 316

-9-

F.3d at 3-4.  These cases stand for the proposition that a communication *could* violate the stay, nothing more.

A Chapter 7 debtor must decide whether to redeem secured property, reaffirm the debt, or surrender the property.  11 U.S.C. § 521(a)(2)(A).  When the debtor decides to redeem or reaffirm, he or she will need information regarding the amount owed, the interest rate, and other specifics of the debt.  If the debtor chooses to surrender, however, the choice does not become effective until discharge enters; until then, the debtor may change his or her mind about surrendering the property, and there is a valid purpose in sending the debtor information toward that choice.  Also, it is possible that the debtor could choose to surrender the property but still make payments on the indebtedness; Congress has recognized that there would be a valid purpose in communicating information about the debt in that scenario.  *See* 11 U.S.C. § 524(j).  Even if the debtor surrenders the property and stops making payments, he or she has a right to redeem the property until foreclosure and, in Alabama, up to a year after foreclosure.  *See* ALA. CODE § 6-5-248(b).

Communication of information regarding a residential mortgage debt is not an "act to collect" a debt if there is a valid purpose in communicating the information and if the communication itself is informational only; *i.e.*, it cannot overtly demand payment or have the effect of coercing payment.  Connor v. Countrywide Bank, N.A. (In re Connor), 366 B.R. 133, 137-38 (Bankr. D. Haw. 2007).  For the reasons discussed above, a debtor's mere indication of his or her intent to surrender the property, without more, does not invalidate a mortgagee's purpose in providing information.  But that does not mean that a debtor is doomed to an eternity of unwanted informational letters.  For instance, a debtor surrendering property could offer the

-10-

mortgagee a deed in lieu of foreclosure; such action would save time, hassle, and expense for all parties involved.  If the mortgagee refuses such a deed, any subsequent "informational" communications would lose the validity of their purpose; they would instead become harassing and violative of the automatic stay.  Also, the debtor (or his or her bankruptcy attorney) could simply ask the mortgagee to cease the informational communications; such action would likewise invalidate the informational purpose of subsequent communications.

Even if a communication has a valid informational purpose, it must be limited to that purpose to avoid violating the automatic stay.  This generally requires that the communication have at least one prominent and unambiguous disclaimer to that effect, and a lengthy communication should have multiple disclaimers.  Moreover, the body of the communication should be limited to providing information; it should not demand payment, nor have the overall effect of inviting or coercing payment.

In sum, communication of the existence of a debt is an "act to collect" under § 362(a)(6) if it overtly demands payment, coerces its recipient to provide payment, or lacks a valid informational purpose.  With that in mind, the Court turns to the merits of Chase's motion.

### III.  ANALYSIS

Chase does not attack the willfulness of its conduct or Plaintiffs' injury in its motion to dismiss.  Instead, Chase argues that its conduct did not violate the automatic stay at all.  Therefore, the issues are (1) whether Chase's monthly mortgage statements are an attempt to collect an *in personam* debt against Plaintiffs, (2) whether Chase may hold Plaintiffs responsible for force-placed hazard insurance on the Property after Plaintiffs have surrendered the Property

-11-

and, to the extent Chase may not, whether its insurance letters are an attempt to collect from Plaintiffs personally, and (3) whether Chase may be held liable for the conduct of its servicer, Seterus.

## A.  Monthly Mortgage Statements

Plaintiffs indicated in their schedules their intent to surrender the Property.  However, nothing in their complaint suggests that they offered Chase a deed to the Property in lieu of foreclosure, or that they asked Chase to stop sending them monthly statements.  Therefore, Chase had a valid purpose to provide information to Plaintiffs regarding the mortgage in the event they changed their minds later or subsequently decided to resume payments on the mortgage.  The fact that Chase communicated the existence of the debt to Plaintiffs is not by itself an act to collect the debt.

Nor do the statements overtly demand or coerce payment.  They provide a helpful itemization of the original principal balance, unpaid principal balance, the escrow balance, and the interest rate.  There is a section on the first page titled "Explanation of Amount Due," but that merely provides an itemization of what the monthly payment consists of (*i.e.*, the amounts of principal, interest, and escrow) if Plaintiffs should decide to pay it; there is no other language on the first page demanding payment.  In light of the prominent and unambiguous disclaimer at the bottom of the page, a reasonable consumer bankrupt would not construe this as a demand for payment.  The back of the first page is similar: it provides information to assist Plaintiffs in paying if they choose, but says nothing that could be construed as a direct demand for payment, and also features another prominent bankruptcy disclaimer.  The second page features a payment stub, but also states in bold capital letters at the top of the page that it is for informational

purposes only; it also features a third prominent and unambiguous bankruptcy disclaimer. Taken as a whole, the statements cannot reasonably be construed as overt demands for payment from Plaintiffs or as trying to coerce payment from Plaintiffs. Given that the statements had a valid informational purpose, they do not represent "acts to collect" within the meaning of § 362(a)(6).

## B. Hazard Insurance Letters

Plaintiffs argue in their response brief that their contractual obligation to maintain hazard insurance on the Property was an *in personam* obligation that arose pre-petition, that the enforcement of the obligation was stayed by § 362(a), and that the obligation was discharged in their bankruptcy. They are correct. However, it was also an *in rem* obligation that continued to run with the Property in spite of Plaintiffs' bankruptcy. A mortgagee's "*in rem* rights still exist after a debtor obtains a discharge." Henriquez v. Green Tree Servicing, LLC (In re Henriquez), 536 B.R. 341, 348 (Bankr. N.D. Ga. 2015). That includes the right to hold Plaintiffs responsible for hazard insurance to the extent that it can be done through the Property; *i.e.*, Chase may enforce the obligation to maintain hazard insurance against Plaintiffs' equity in the Property. Id. As one court has explained:

> Forces remain[] at work that c[an] make . . . continued ownership of the real estate uncomfortable – forces like accruing real estate taxes and the desirability of maintaining liability insurance for the premises. But those forces are incidents of ownership. Though the [Bankruptcy] Code provides debtors with a surrender option, it does not force creditors to assume ownership or take possession of collateral. And although the Code provides a discharge of personal liability for debt, it does not discharge the ongoing burdens of owning property.

Canning v. Beneficial Maine, Inc. (In re Canning), 442 B.R. 165, 172 (Bankr. D. Me. 2011).

Thus, Chase cannot enforce the obligation to maintain hazard insurance against Plaintiffs

-13-

personally. *See* <u>Arsenault v. JP Morgan Chase Bank, N.A. (In re Arsenault)</u>, 456 B.R. 627, 631

(Bankr. S.D. Ga. 2011). But if, for instance, Chase forecloses on the Property and obtains more

than what is owed on its mortgage, it may offset its cost of force-placed hazard insurance against

the surplus that Plaintiffs would otherwise be entitled to. *See* <u>Henriquez</u>, 536 B.R. at 348.

Having clarified the extent to which Chase can enforce the obligation to maintain hazard

insurance on the Property, the question becomes whether the insurance letter Chase mailed to

Plaintiffs was an "act to collect" against them personally. At first blush, the letter has a coercive

aspect to it. In the first paragraph on the first page, the letter explicitly states that Plaintiffs "must

pay" Chase for any insurance Chase buys on the Property. The comparative chart between

owner's insurance and force-placed insurance on the second page is clearly written in a manner

designed to encourage Plaintiffs to buy their own insurance, and warns that Chase would

"charge" them for force-placed insurance. The "frequently asked questions" section of the letter

likewise encourages Plaintiffs to purchase insurance on the Property.

Chase argues that the insurance letters and the content within them were necessary to

comply with RESPA, 12 U.S.C. §§ 2601 *et seq.*, and with Regulation X of the Bureau of

Consumer Financial Protection ("Regulation X"), 12 C.F.R. §§ 1024.1 *et seq.* As relevant to this

case, RESPA provides that "[a] servicer may not impose any charge on any borrower for force-

placed insurance with respect to any property securing a federally related mortgage unless" the

servicer sends two written notices to the borrower containing the following information:

> (i) a reminder of the borrower's obligation to maintain hazard
> insurance on the property securing the federally related mortgage;
>
> (ii) a statement that the servicer does not have evidence of
> insurance coverage of such property;

-14-

(iii) a clear and conspicuous statement of the procedures by which the borrower may demonstrate that the borrower already has insurance coverage; and

(iv) a statement that *the servicer may obtain such coverage at the borrower's expense* if the borrower does not provide such demonstration of the borrower's existing coverage in a timely manner[.]

12 U.S.C. § 2605(*l*)(1)(A)-(B) (emphasis added); *see also* 12 C.F.R. § 1024.37(c)(2)(vi) (requiring notice to include "[a] statement that hazard insurance is required on the borrower's property, and that the servicer has purchased or will purchase . . . such insurance at the borrower's expense").  The only way Chase could obtain hazard insurance on the Property and charge the cost of the insurance against Plaintiffs' equity in the Property was to comply with RESPA and Regulation X, which meant that Chase was required to include the language warning Plaintiffs that they would be charged for Chase's force-placed insurance.  *See* <u>Henriquez</u>, 536 B.R. at 348 ("The [servicer] had a right to protect its collateral by obtaining insurance on the [p]roperty if the [borrower] did not provide evidence that the [p]roperty was insured.  In order to protect its rights to collect the cost of insurance from the sale of the [p]roperty, the [servicer] sent these notices in accordance with RESPA."); *cf.* <u>Chase Manhattan Mortg. Corp. v. Padgett</u>, 268 B.R. 309, 314-15 (S.D. Fla. 2001) (noting that a mortgagee may notify a bankruptcy debtor of escrow deficiencies without violating the automatic stay).

Citing Regulation X, Plaintiffs respond that Chase cannot charge them for force-placed insurance because "[t]he foundation of Chase's right to assess and collect from [them the] charge for the insurance is the now discharged obligations pursuant to the 'mortgage loan contract.'"

(Doc. 14, p. 15) (citing 12 C.F.R. § 1024.37(b)).[2]  This argument is a non-starter.  Neither

RESPA nor Regulation X parses between "borrowers" personally and borrowers' equity in realty;

their use of the term "borrower" is inclusive of both the *in personam* and *in rem* aspects of the

obligation.  The automatic stay prohibited Chase from enforcing the obligation against Plaintiffs

personally, but nothing prevented Chase from enforcing it against Plaintiffs' equity in the

Property.  Moreover, the Plaintiffs' bankruptcy filing and discharge of their obligation under the

mortgage loan contract does not change the fact that they "failed to comply with [its] requirement

to maintain hazard insurance."  *See* 12 C.F.R. § 1024.37(b).  Nor is Chase required to, as

Plaintiffs suggest, buy its own insurance or foreclose on the property.  *See* Henriquez, 536 B.R. at

348; Arsenault, 456 B.R. at 630 ("Consistently with the general principal that surrender of

encumbered property leaves the secured creditor in control of the exercise of its remedies, a

[debtor] cannot require a secured creditor to accept a surrender of property or take possession of

or title to it through repossession or foreclosure.").  When a debtor places a mortgagee's

collateral at risk by failing to abide by the terms of the mortgage, the mortgagee has a valid

purpose in offsetting its cost of protecting the collateral against the debtor's equity in the

collateral, and the mortgagee's necessary compliance with RESPA toward that end likewise falls

within that purpose.

Of course, due to the coercive nature of the language RESPA and Regulation X requires

in these situations, inclusion of a prominent, unambiguous, and explanatory bankruptcy

---

[2]  "A servicer may not assess on a borrower a premium charge or fee related to force-placed insurance unless the servicer has a reasonable basis to believe that the borrower has failed to comply with the mortgage loan contract's requirement to maintain hazard insurance."  12 C.F.R. § 1024.37(b).

disclaimer within these letters is necessary to prevent the letters from running afoul of the

automatic stay. A superb example of such a disclaimer is found in <u>Henriquez</u>:

> **THIS INFORMATIONAL NOTICE IS NOT AN ATTEMPT TO COLLECT A DEBT. INSTEAD, IT IS A LEGALLY REQUIRED NOTICE OF THE CREDITOR'S RIGHT TO PLACE INSURANCE ON THE COLLATERAL TO PROTECT ITS SECURITY INTEREST AGAINST UNINSURED LOSS. THE CREDITOR IS ONLY EXERCISING ITS RIGHTS UNDER THE SECURITY AGREEMENT AS ALLOWED BY LAW. IF YOUR ACCOUNT WAS DISCHARGED IN BANKRUPTCY WITHOUT A REAFFIRMATION, THE CREDITOR IS NOT ATTEMPTING TO COLLECT OR RECOVER THE DISCHARGED DEBT AS YOUR PERSONAL LIABILITY.**

<u>Henriquez</u>, 536 B.R. at 347 (capital letters and bold type in original).

Chase's bankruptcy disclaimer on the insurance letter it sent them is underwhelming,

particularly when compared to the <u>Henriquez</u> disclaimer, but it is effective enough to shield

Chase from liability in this case. It is reasonably prominent, its qualification is met, and it states

the letter is for compliance purposes only and is not an attempt to impose personal liability.

A debtor's mortgage-based obligation to provide hazard insurance on the mortgaged

property includes an *in rem* component of the obligation that is not dischargeable in bankruptcy

and that is enforceable against the debtor's equity in the property. When a mortgagee is forced to

buy insurance to protect its collateral, the Bankruptcy Code's automatic stay and discharge

injunction do not prohibit it from charging the cost of the insurance against the debtor's equity in

the property. For the mortgagee to offset its cost in this manner, RESPA requires the mortgagee

to provide the debtor with notices warning the debtor of what it is about to do. So long as that

-17-

notice has an adequate bankruptcy disclaimer, it is not an "act to collect" a debt against the debtor personally within the meaning of § 362(a)(6).

### C.  Liability for Seterus's Conduct

Plaintiffs argue in their response brief that they "are entitled to a presumption" that Chase "remains responsible" for Seterus's conduct on the grounds that Seterus acted as the agent of Chase.  At the motion to dismiss stage, however, the only presumption Plaintiffs are entitled to is that the well-pled factual allegations in their complaint are true.  Iqbal, 556 U.S. at 679.  Legal assertions and conclusory statements are not entitled to the assumption of truth.  Id. at 678.  The Court recognizes that Plaintiffs have not had the opportunity to conduct discovery, but at the same time Plaintiffs are the masters of their complaint.  If they believe Seterus acted as the agent of Chase they bear the burden of pleading factual matter sufficient to support the inference of an agency relationship.

"Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other act on his behalf and subject to his control, and consent by the other to so act."  RESTATEMENT (SECOND) OF AGENCY § 1(1) (1958); *see also* Ware v. Timmons, 954 So. 2d 545, 553 n.9 (Ala. 2006).  In Alabama,

> "[t]he relation of agency is created as a result of conduct by two parties manifesting that one of them is willing for the other to act for him subject to his control, and that the other consents so to act. The principal must in some manner indicate that the agent is to act for him, and the agent must act or agree to act on the principal's behalf and subject to his control."

Ware, 954 So. 2d at 552-53 (quoting RESTATEMENT (SECOND) OF AGENCY § 1 cmt. a (1958)).  The only factual matter Plaintiffs pled in support of their agency theory is that Chase

"transferred" their mortgage to Seterus. That is far too vague to support an inference of agency between Chase and Seterus.

Alternatively, Plaintiffs argue that Chase is liable for Seterus's conduct because it failed to notify Seterus of their bankruptcy and discharge.[3] The Court agrees that a mortgagee who transfers its loan to a servicer is liable for the violative acts of the servicer if the mortgagee fails to notify the servicer of the debtor's bankruptcy. Walker v. M & M Dodge, Inc. (In re Walker), 180 B.R. 834, 844-45 (Bankr. W.D. La. 1995). However, a failure to notify a servicer of a bankruptcy does not shackle the mortgagee to the servicer's conduct forever. Instead, the mortgagee's liability ends once the servicer receives notice itself of the bankruptcy – from any source. Past that point the servicer becomes liable for its own violative conduct.

Plaintiffs allege that shortly after Chase transferred their mortgage, Seterus began "sending bill invoices" and "making multiple harassing phone calls" to Plaintiffs "notwithstanding the Plaintiffs telling the callers that they had filed for bankruptcy on the debt." (Doc. 1). The complaint does not allege that Chase failed to notify Seterus of Plaintiffs' bankruptcy. It offers no specific facts regarding the "bill invoices" nor attaches an example of them. Plaintiffs' characterization of the statements as "bill invoices," without more, is a conclusory statement not entitled to the assumption of truth. At most, the Court can infer that

---

[3] Plaintiffs suggest in their response brief that Chase sold its mortgage interest to Seterus, and cite cases for the proposition that "[t]he selling of accounts is a deliberate act to collect on a discharged debt." (Doc. 14, p. 17) (quoting In re Nassoko, 405 B.R. 515, 520 (Bankr. S.D.N.Y. 2009); In re Lafferty, 229 B.R. 707, 714 (Bankr. N.D. Ohio 1998)). These cases do not support Plaintiffs' inference. Nassoko and Lafferty are distinguishable from this case because they involved sales of discharged unsecured debts. As a mortgagee retaining *in rem* rights, Chase certainly had the right to sell its interest to Seterus without the sale becoming an "act to collect" against Plaintiffs.

-19-

Seterus communicated the existence of the debt to Plaintiffs, which with a valid informational purpose is not an act to collect the debt. Plaintiffs' characterization of Seterus's phone calls as "harassing" is likewise conclusory; without more specific factual allegations, the Court cannot infer that a phone call by itself violated the automatic stay. The Court can infer multiple phone calls as being violative, but Plaintiffs allege that they informed Seterus of their bankruptcy at the first phone call. At that point, any liability Chase would have for failing to inform Seterus of the bankruptcy would terminate, and Seterus itself would be responsible for its conduct going forward. Plaintiffs have not alleged sufficient facts to give rise to a plausible inference that Chase can be held liable for Seterus's conduct. Since Chase's own conduct did not violate the automatic stay, its motion to dismiss should be granted.

## IV. CONCLUSION

The communication of the existence of a debt is an "act to collect" within the meaning of 11 U.S.C. § 362(a)(6) only if it overtly demands payment, has the effect of coercing payment, or lacks a valid informational purpose. Chase's monthly mortgage statements had a valid informational purpose and did not demand or coerce payment. Chase's insurance letters were no more coercive than was necessary under RESPA to offset the cost of force-placed insurance against Plaintiffs' equity in the Property, which Chase has a right to do. Finally, Plaintiffs have

not alleged sufficient facts to impute Seterus's conduct against Chase.  Therefore, Plaintiffs have

failed to state a claim against Chase, and Chase's motion to dismiss is GRANTED.

Done this 5th day of August, 2016.

United States Bankruptcy Judge


c: Charles E. Grainger, Attorney for Plaintiffs
   John D. Collins, Attorney for JPMorgan Chase
   Elizabeth Jordan Teague, Attorney for Seterus Inc.
   Joshua B. White, Attorney for Seterus Inc.
   Matthew Thomas Mitchell, Attorney for Seterus Inc.